UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 15-mc-00171-P1

JOHN DOE,

Petitioner/Judgment Creditor,

v.

EJERCITO DE LIBERACION NACIONAL, a/k/a ELN, a/k/a National Liberation Army, and FUERZAS ARMADAS REVOLUCIONARIOS DE COLOMBIA, a/k/a FARC, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA,

Defendants/Judgment Debtors, and

JP MORGAN CHASE BANK, N.A.,

Respondent.

_______________________________________/

**PETITIONER JOHN DOE'S PETITION FOR TURNOVER ORDER DIRECTED AT JP MORGAN CHASE BANK, N.A.**

Petitioner John Doe, by and through undersigned counsel, files this Petition for Turnover Order Directed at JP Morgan Chase Bank, N.A., and alleges:

**INTRODUCTION**

Petitioner John Doe was on a business trip, traveling by bus from Colombia to his native Venezuela, when his bus was suddenly stopped by armed men on the Venezuelan side of the border. The men belonged to Ejercito De Liberacion Nacional ("ELN"), who forced Petitioner to disembark the bus, placed a bag over his head, and transported him to the jungles of Colombia where for two weeks he was repeatedly beaten, tortured, shot, and ultimately ordered to be killed. Petitioner pled for his life and the ELN sold Petitioner to Fuerzas Armadas Revolucion

De Colombia ("FARC"). For eleven months, Petitioner was routinely beaten, raped, starved, tortured, forced to watch FARC kill other captives and then ordered to bury the dead. His family paid a ransom for his release.

As a result of his imprisonment, Petitioner sustained multiple psychological and physical injuries, underwent multiple reconstructive surgeries, and suffers from extreme psychological trauma to this day. Petitioner filed a lawsuit in the United States District Court for the Southern District of Florida to recover damages related to his kidnapping and torture at the hands of the ELN and FARC. On January 5, 2012, the court entered a judgment against ELN and FARC for a total amount of $36,800,000.00, $16,800,000 of which was compensatory damages. The bulk of this judgment is still due and owing.

On June 18, 2015, in order to execute against assets located held in accounts JP Morgan Chase Bank, N.A.'s ("Chase") offices in New York, New York, Petitioners registered their judgment in this District pursuant to 28 U.S.C. § 1963. DE 1. By the express terms of that statute, Petitioner is entitled to execute this judgment in like manner as a judgment of this Court. On July 14, 2015, this Court issued a Writ of Execution against FARC for $ 26,800,000.00, the portion of the judgment for which it is liable.

By this Petition, Petitioner seeks to collect on this judgment by garnishing bank accounts belonging to agencies and/or instrumentalities of FARC pursuant to the Terrorism Risk Insurance Act ("TRIA"), and Federal and New York procedure.

## PARTIES

1. The Petitioner, John Doe, is a resident alien of the United States, a resident of Florida, and a citizen of Venezuela. Petitioner obtained a judgment in this action against the narco-terrorist organizations ELN and FARC for $16,800,000.00 in compensatory damages,

jointly and severally, and $10,000,000.00 in punitive damages against each defendant. The Judgment was obtained pursuant to a civil action brought under the Alien Tort Statute, 28 U.S.C. § 1350, and Civil RICO, 18 U.S.C. §§ 1961-1698, arising from the FARC and ELN's international kidnapping, torture, and ransom of Petitioner. $16,480,794.07 of the compensatory portion of the judgment remains due and owing.

2. ELN, or National Liberation Army, is an armed and violent organization in the Republic of Colombia. Since its inception in the early 1960s, ELN has targeted both Colombian and foreign nationals while engaged in terrorist activities that include murder, hostage taking, and the violent destruction of property.

3. FARC, or Revolutionary Armed Forces of Colombia, is the largest armed and violent organization in the Republic of Colombia. Like ELN, FARC has targeted both Colombian and foreign nationals while engaged in terrorist activities that include murder, hostage taking, and the violent destruction of property.

4. Chase is a leading global financial services firm with operations worldwide and assets totaling nearly $2.6 trillion. Chase offers a broad range of financial services including personal banking, small business lending, auto financing, and investment services. Chase operates approximately 5,400 bank branches across the United States, including branches located in the Southern District of New York.

**JURISDICTION**

5. This Court has personal jurisdiction over the Garnishee because it is headquartered in New York.

6. This Court has jurisdiction over the res Petitioner seeks to garnish as it is held in an account located in the Southern District of New York. As a result, this Court has quasi in rem jurisdiction over this action.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws or treaties of the United States.

8. This Court also has subject matter jurisdiction because the overall amount in controversy exceeds $75,000 and absolute diversity exists between Petitioner and the Defendants. 28 U.S.C.A. § 1332(a)(2).

9. This Court need not have personal jurisdiction over defendants to enforce a money judgment against them by garnishment of their assets held by third parties in this state. Nevertheless, this Court has personal jurisdiction over defendants due to the extensive contacts with this forum in their drug trafficking, money laundering and global terrorist activities, including the use of financial institutions in New York that resulted in the blocked assets at issue here. Further, the agencies or instrumentalities of FARC whose blocked assets are the target of garnishment used the New York financial system resulting in the blocked assets at issue here.

10. Venue is proper in the Southern District of New York, because Chase holds funds belonging to instrumentalities of FARC in accounts located in the Southern District of New York.

**BASIS FOR TURNOVER ORDER**

11. Petitioner obtained a judgment on January 5, 2012, against the narco-terrorist organizations ELN and FARC for $16,800,000.00 in compensatory damages, jointly and severally, and $10,000,000.00 in punitive damages against each Defendant. The Judgment was obtained pursuant to a civil action brought under the Alien Tort Statute, 28 U.S.C. § 1350, and

Civil RICO, 18 U.S.C. §§ 1961-1968, arising from FARC and ELN's international kidnapping, torture, and ransom of Petitioner. This judgment was duly registered in this district on June 18, 2015. $16,480,794.07 of the compensatory portion of the judgment remains due and owing.[1]

12. On July 14, 2015, Petitioner served a restraining notice on Chase pursuant to New York procedure.

13. This Court issued a writ of execution on August 21, 2015, permitting execution to satisfy the compensatory portion of the judgment in the amount of $26,800,000 in favor of Petitioner and against FARC.[2]

14. Chase has in its possession accounts in which FARC has an interest, or which, according to TRIA, are blocked assets that can be used to satisfy the compensatory portion of a qualifying judgment against FARC. Specifically, Chase has in its custody blocked assets or accounts belonging to FARC's agencies or instrumentalities, Kassim Tajeddine ("Tajeddine"), Grand Stores Ltd. ("Grand Stores"), and Tajco a/k/a Tajco Ltd. ("TAJCO").

15. Chase holds funds in accounts ending in 6923 and 3534, and blocked by Chase pursuant to the Office of Foreign Asset Control's ("OFAC") regulations, that represent the surrender value of two insurance policies purchased by Tajeddine along with the value of the final premium payments associated with those insurance policies. Tajeddine is a Specially Designated Global Terrorist ("SDGT") (and identified by OFAC as a front company for the same OFAC-designated individual) whose blocked assets are available for collection.

16. Chase holds funds in an OFAC blocked account ending in 2908 that belong to Grand Stores. Grand Stores is an SDGT and originator of the transaction whose blocked assets

---

[1] The award of punitive damages totaling $20 million is still due and owing as well.

[2] This Court also issued a writ of execution on August 21, 2015, permitting execution to satisfy the compensatory portion of the judgment in the amount of $26,800,000 in favor of Petitioner and against ELN.

are available for collection. As no intermediary bank has any claim to the blocked funds, the funds are owed back to the originator, making the funds available for collection.[3]

17. Chase holds funds in an OFAC blocked account ending in 4295 that belong to TAJCO. TAJCO, a recognized SDGT, is both originator and beneficiary of the transaction and recognized by OFAC as a front company for the same OFAC designated individual whose assets are available for collection. The blocked assets are subject to TRIA collection and no other entity involved in the transaction can claim any ownership interest.[4]

18. Chase has admitted to having possession of these funds in OFAC blocked accounts located at its bank branches in this district.

## TRIA PROVIDES FOR EXECUTION AGAINST THE BLOCKED ASSETS OF AN AGENCY OR INSTRUMENTALITY OF TERRORIST PARTY JUDGMENT DEBTORS.

19. TRIA allows for execution on the blocked assets of a terrorist party, or its agency or instrumentalities, to satisfy a judgment against the terrorist party. Specifically, Section 201(a) of TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28 U.S.C., the blocked assets of that terrorist party (**including the blocked assets of any agency or instrumentality of that terrorist party**) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent any compensatory damages for which such terrorist party has been adjudged liable.

20. "Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post- judgment execution and attachment proceedings against property held in the hands of an

[3] While blocked funds generally revert to the prior transmitting entity in the transaction (*see Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014), when that party has no interest in them, they revert back to the originator. *See also Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 941 (D.C. Cir. 2013) ("claims on an interrupted funds transfer ultimately belong to the originator . . .".).

[4] *See Gates v. Syrian Arab Republic*, 2014 WL 5784859, at *3 (N.D. Ill. Nov. 6, 2014) (finding that EFTs held by intermediary bank were subject to turnover order where both originator and beneficiary of transaction was a terrorist party).

instrumentality of the judgment-debtor, ***even if the instrumentality is not itself named in the judgment***." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) (emphasis added) (affirming appointment of receiver to sell property of terrorist state); *Estates of Ungar ex rel. Strachman v. The Palestinian Auth.*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004) (finding that blocked assets of instrumentality of the terrorist organization Hamas was subject to execution and attachment under TRIA).

21. Pursuant to TRIA, creditors may execute on blocked assets belonging to instrumentalities of terrorist groups so long as four requirements are met:

> 1) A person has obtained a judgment against a terrorist party; 2) The judgment is either for a claim based on an act of terrorism, or for a claim for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7); 3) the assets are "blocked assets" within the meaning of TRIA; and 4) execution is sought only to the extent of compensatory damages.

22. Pursuant to TRIA § 201(d)(2), codified as § 1610(d)(2), a "blocked asset" means "any asset seized or frozen by the United States under Section 5(b) of the Trading With the Enemy Act . . . or under sections 202 and 203 of the International Emergency Economic Powers Act . . . ."

23. Both FARC and ELN have been designated as Foreign Terrorist Organizations [FTOs], pursuant to the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189.[5] Moreover, in 2001, FARC and ELN were named as SDGTs under Executive Order 13224, issued pursuant to the International Economic Emergency Powers Act ("IEEPA"), 50 U.S.C. §§ 1701—02. Thus, Petitioner has a valid judgment against recognized terrorist groups.

---

[5] 8 U.S.C. §§ 1189(a)(1) authorizes the Secretary of State to designate an organization as a foreign terrorist organization… if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity…; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1).

24.     OFAC has designated Tajeddin, Grand Stores and TAJCO as SDGTs under the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594.[6] Furthermore, all three entities have been recognized as agencies or instrumentalities of FARC due to their involvement in the purchase, sale, trafficking, storage, and distribution of FARC coca paste and cocaine, and their assistance in FARC's financial and money laundering network.[7]

25.     In *Stansell v. Revolutionary Armed Forces of Colom.*, No. 8:09-cv-02308-RAL-MAP, at *7—8 (M.D. Fla. Feb. 17, 2015), the United States District Court for the Middle District of Florida held that Tajeddin, Grand Stores, and TAJCO were each "an agency or instrumentality of the FARC." The court found that the three entities, along with three other SDGTs, were instrumentalities of FARC because they:

> were involved in the purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or assisted the FARC's financial or money laundering network and materially assisted or played a significant role in the FARC's cocaine manufacturing and international trafficking.

*Id.*[8] Therefore, the court held that the blocked assets of the SDGTs were each a "blocked asset" as defined under TRIA and subject to execution and garnishment. *Id.* at *8.

---

[6] OFAC's decisions are entitled to great deference. *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989) (holding that OFAC's decision was entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999) (stating that OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation."); *Consarc Corp. v. OFAC*, 71 F.3d 909, 914-15 (D.D.C. 1995); *Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury*, 750 F. Supp. 2d 150 (D.D.C. 2010) (declaring that OFAC regulations carry the force of law); *see also* 31 C.F.R. § 538.802.

[7] *See Stansell v. Revolutionary Armed Forces of Colom.*, No. 8:09-cv-02308-RAL-MAP, at *7—8 (M.D. Fla. Feb. 17, 2015), attached as Ex. A.

[8] The district court defined an agency or instrumentality as
Any SDNT ..., including all of its individual members, divisions and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, ... because it was either:
(1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of ... [FARC]; and/or
(2) owned, controlled, or directed by, or acting for or on behalf of, ... [FARC]; and/or

26. Additionally, Petitioner provides the Affidavit of David L. Gaddis, former Drug Enforcement Agency official, that Kassim Tajeddin and the entities related to him, including Grand Stores and TAJCO, are all agencies and instrumentalities of the FARC.[9] As he summarizes, Tajeddin and the companies associated with him were implicated in a major conspiracy to traffic and launder FARC cocaine and use the proceeds to support Hezbollah.[10]

27. Grand Stores and TAJCO played a significant role in FARC's cocaine manufacturing and international trafficking. Because Grand Stores and TAJCO are recognized agencies or instrumentalities of FARC, the blocked assets of these entities are subject to execution under TRIA.

28. Additionally, the judgment is for a claim for which a terrorist party is not immune under 28 U.S.C. § 1605, which concerns the immunity of foreign states. As the defendants in this matter are not foreign states, Section 1605 is inapplicable and so cannot work to prevent collection. Accordingly, the assets belonging to these SDGTs are "blocked assets" "as defined in Section 201(d) of TRIA and are subject to execution and garnishment under Section 201(a) of TRIA to partially satisfy Petitioner's judgment.

**NEED FOR A TURNOVER ORDER**

29. Petitioner has a valid, subsisting, unpaid judgment with an outstanding compensatory award of $16,480,794.07 jointly against FARC and ELN, and Tajeddin, Grand Stores, and TAJCO are instrumentalities of FARC subject to execution and garnishment under TRIA. Chase is in possession of funds held in blocked accounts that belong to FARC and its instrumentalities.

---

(3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].
*Stansell*, 771 F.3d 713, 724 n.6.

[9] *See* Affidavit of David Gaddis, attached hereto as Ex. B.

[10] *Id.* at 30.

30. Petitioner has an interest in the accounts because the money deposited into those accounts belongs to FARC through Tajeddin, Grand Stores and TAJCO, and Petitioner is entitled to possession of those funds.

31. Petitioner's rights to the account funds are superior to those of Chase because Petitioner has obtained a judgment lien against FARC.

32. Upon information and belief, no adverse claimants have priority over Petitioner to the funds that are subject to the writs of execution.

33. To date, no release of funds has been made pursuant to the writ of execution.

34. Failure to release funds in satisfaction of the writ of execution is in contravention of CPLR Section 5225(b).

**CONCLUSION**

WHEREFORE, Petitioner prays that this Court issue an Order, in the proposed form attached as Ex. C, pursuant to TRIA, Federal Rule of Civil Procedure 69 and CPLR Section 5225(b):

(a) directing Chase to turn over to the Marshall, funds from the Blocked Accounts which belong to FARC and/or their instrumentalities, all funds in those accounts in partial satisfaction of the judgment, together with interest and Marshall's fees;

(b) awarding fees and costs of this proceeding; and

(c) awarding such other further relief as this Court deems just and proper.

Dated this 31st day of August, 2015.

        Respectfully submitted,

/s/ Brett E. von Borke
Brett E. von Borke, Esq.
New York Bar No. 5258876
bvb@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard, Suite 1150
Coral Gables, Florida 33134
Telephone: (305) 442-8666
Facsimile: (305) 285-1668

*Counsel for Plaintiff/Judgment Creditor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 31, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Brett E. von Borke
Brett E. von Borke, Esq.